(No. 6457.   May 7, 1938.)

In the Matter of Petition of NELLIE P. BEAN for Writ of Habeas Corpus. NELLIE P. BEAN, Appellant, v. STATE OF IDAHO, Respondent.

[79 Pac. (2d) 540.]

C. M. Jeffery, for Appellant.

M. E. Zener and Carl C. Christensen, for Respondent.

BUDGE, J.—In this case a judgment was entered against appellant, Nellie P. Bean, in the justice's court of Pocatello precinct. An execution on said judgment was placed in the hands of the constable for levy and the constable made return

thereon of no property found. Thereafter appellant was examined in supplemental proceedings, at the conclusion of which the court found appellant to be the owner of 248 shares of stock of the Southeast Securities Co., Inc., a corporation, and ordered her to secure and turn over certificates for such stock on or before January 6, 1936, so that as much thereof as would be necessary could be sold to satisfy the judgment against appellant. After the time for compliance with said order expired, there having been no compliance, appellant was held in contempt and committed to the sheriff of Bannock county and ordered imprisoned until she either comply with the order or pay the judgment.

Appellant instituted *habeas corpus* proceedings, writ issued, and a hearing was had in the district court and the writ quashed, from which this appeal was taken.

■ *Habeas corpus* is an extraordinary remedy only and cannot be employed as an appellate remedy. (*In re Davis,* 23 Ida. 473, 130 Pac. 786; 29 C. J., pp. 19, 20.) This court is concerned only with the question of whether the justice's court had jurisdiction to make the contempt commitment.

■ Appellant urges that the justice's court exceeded its jurisdiction in ordering imprisonment of appellant until compliance with the order of the court, urging that under the provisions of sec. 10–1204, I. C. A., justice's and probate courts are limited in their power to punish for contempt to a fine not exceeding $100 or one day's imprisonment. Section 13–611, I. C. A., provides:

"When the contempt consists in the omission to perform an act which is yet in the power of the person to perform, he may be imprisoned until he has performed it, and in that case the act must be specified in the warrant of commitment."

In *In re Niday,* 15 Ida. 559, 98 Pac. 845, the foregoing contention is answered to the contrary, the court saying:

"Our statutes on contempt, both in justice's and probate courts, as well as contempt of courts generally, were copied from the statutes of California. Secs. 4750 to 4754 correspond with secs. 906 to 910 of the Code of Civil Procedure of California, while secs. 5155 to 5168, inclusively, of the Rev. Stat., (secs. 13–601 to 13–614, I. C. A.) dealing with contempts generally, correspond with secs. 1209 to 1222, in-

clusively, of the Code of Civil Procedure of California dealing with the same subject. Sec. 4777, Rev. Stat. of Idaho corresponds to the general provisions of the statutes 'which are in their nature applicable to the organization, powers and course of procedure' in justice's and probate courts.

"In *Ex Parte Latimer*, 47 Cal. 131, the supreme court of California had under consideration the question as to the power of a justice of the peace to commit a person for contempt in refusing to obey an order of the court and directing that he be imprisoned until he complied with the order. The court there held that the provisions of sec. 1219 of the Code of Civil Procedure of California are applicable to justice's courts. Sec. 5165 of the Rev. Stats. of this state, (sec. 13–611, I. C. A.) is identical with the last named section of the California Code. Since these provisions of the statute were copied from the California Code and had been construed by the highest court of that state at the time of their adoption by the legislature of this state, we are constrained to accept the construction placed upon them by the courts of the state from which they were taken." (See, also, *Ex parte Latimer*, 47 Cal. 131.)

It is also urged that the order of the justice's court compelling the petitioner to transfer corporate stock was in excess of the jurisdiction of a justice's court conferred by sec. 1–1403, I. C. A., which contention appears to have been answered in *In re Niday, supra,* and by the provisions of sec. 10–1105, I. C. A., providing as follows:

"Supplementary proceedings.—The provisions of this code as to proceedings supplementary to execution in the district court are applicable to probate and justice's courts, the necessary changes and substitutions being made therein."

It is appellant's further theory that the writ should not have been quashed for the reason that the court was without jurisdiction, because title to 247 shares of the stock could not be litigated in this action, for the reason that the court had no jurisdiction of Gertrude Priestly, whom appellant testified was the owner of 247 shares of the stock, nor jurisdiction of the stock certificates. Conceding, but not deciding, there may be some question as to the ownership of 247 shares of the capital stock involved, there is no contro-

versy as to the ownership or control of one share of the capital stock. The order of the justice's court upon which the contempt order is based, recites in part as follows:

"that it is within the power of the said judgment debtor to cause to be issued to her *a valid certificate or certificates* of stock in said corporation in the total amount of Two Hundred Forty-eight (248) shares, and that she is the legal owner of that amount of shares in said corporation, and is in possession and control of that amount of shares of stock in said corporation, and the Court further finds that the amount of Two Hundred Forty-seven (247) shares of stock in said corporation, allegedly issued to one Gertrude Priestly, never were paid for by Gertrude Priestly and are not the property of Gertrude Priestly but have at all times remained under the control of the judgment debtor, Nellie P. Bean, and that in truth and fact said shares of stock are owned by Nellie P. Bean, and that it is within the power of the defendant, Nellie P. Bean, to cause to be issued, directly to her, *a valid certificate* of stock in said corporation covering said Two Hundred Forty-seven (247) shares of stock."

The record discloses that Mrs. Bean delivered a purported certificate for one share of stock, not properly executed (sec. 29–118, I. C. A.), and that she testified that she was the owner of one share of stock, and could have secured a proper certificate therefor, but that her only effort to comply with the order consisted of the delivery of the obviously ineffectual certificate for one share. A portion of Mrs. Bean's testimony was as follows:

"Q. In a period of twelve days, Mrs. Bean, you could have Mrs. Priestly send a stock certificate, could you not, as secretary? A. Yes. . . . . You heard from her in four or five days. A. Yes; I rushed matters because I wanted to prove to you I was telling the truth, because you persisted in telling me I was lying, and I wanted to show you I wasn't."

"Have you taken any steps, Mrs. Bean, to secure a good and sufficient stock certificate for even one share to turn over to the Court? A. There it is. I did exactly what I was told to do. I did what the Court demanded of me to do, and I did it. The Court had his own stenographer put all that print-

ing and all in there. All I did was sign my name. Q. Outside of this effort did you make any others? A. I did not. . . . . Q. Who has possession of the seal now? A. I have. I could put the stamp on any time I wanted to. I have the privilege of doing it."

It clearly appears from the record that appellant was the owner of at least one share of stock and that it was within her power to comply with the order of the court with reference thereto. The court therefore acted within its jurisdiction.

"As to jurisdiction of the subject matter, it seems that, although the judgment may go beyond the issues and grant relief not asked for, or not within the competence of the court, yet it may be good for so much as the court had power and authority to include in it." (34 C. J. 510, sec. 812.)

See: *Audas v. Highland etc. Co.,* 205 Fed. 862; *Connell v. McGahie,* 37 Cal. App. 439, 173 Pac. 1115; *Lord v. F. M. Downling Co.,* 52 Fla. 313, 42 So. 585; *Clark v. Lunsford,* 143 Ga. 513, 85 S. E. 708; *Shahan v. Myers,* 130 Ga. 724, 61 S. E. 702; *Highland Land & Bldg. Co. v. Audas,* (Ky.) 110 S. W. 325; *Maslen v. Anderson,* 163 Mich. 477, 128 N. W. 723; *State v. Evans,* 176 Mo. 310, 75 S. W. 914; *Pacific Express Co. v. Emerson,* 101 Mo. App. 62, 74 S. W. 132; *State v. Silver Bow County Second Judicial Dist. Ct.,* 55 Mont. 324, 176 Pac. 608; *Continental Gin Co. v. Arnold,* 66 Okl. 132, 167 Pac. 613, L. R. A. 1918B, 511; *Roth v. Union Nat. Bank,* 58 Okl. 604, 160 Pac. 505; *Twitchell v. Askew,* (Tex. Civ. App.) 141 S. W. 1072; *Sykes v. Speer,* 102 Tex. 451, 112 S. W. 422; *Michigan Trust Co. v. Ferry,* 175 Fed. 667, 677.

In order for defendant to purge herself of contempt it would be necessary for her to tender in court a legally issued and properly indorsed certificate for one share of stock of such corporation.

The judgment is affirmed.

Morgan, Ailshie and Givens, JJ., concur.

Holden, C. J., did not participate.

Petition for rehearing denied.